# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Stephen Collins,

        Plaintiff,

    v.

Warden J. Fikes, D. Drilling, and J. Best,

        Defendants.

Case No. 22-cv-1320 (JWB/DJF)

**REPORT AND RECOMMENDATION**

## INTRODUCTION

This matter is before the Court on Defendants Warden J. Fikes, D. Drilling, and J. Best's ("Defendants") Motion to Dismiss ("Motion") (ECF No. 25) Plaintiff Stephen Collins's Complaint (ECF No. 9) under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, under Rule 56(a).[1] Mr. Collins opposes the Motion (ECF No. 34).[2] For the reasons set forth below, the Court recommends that the Motion be granted and Mr. Collins's claims be dismissed.

## BACKGROUND

Mr. Collins is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). (*See* ECF No. 9 at 14.) In June 2021, Mr. Collins and two other inmates—Jeremy Mount and Jonathan Sebert—jointly filed a complaint in a separate action against the

---

[1] The undersigned United States Magistrate Judge considers this matter pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

[2] Mr. Collins filed his opposition as a self-styled letter to the Court (ECF Nos. 34 (Mr. Collins's Letter); 35 (Order construing the Letter as opposition to Defendants' Motion)). Mr. Collins also filed an unauthorized self-styled "Sur-Reply/Motion" in response to Defendants' argument that he failed to exhaust his administrative remedies (ECF No. 38). The Court considered both of Mr. Collins's submissions. As discussed below, the Court finds Mr. Collins's claims fail on the merits and recommends Mr. Collins's subsequent motion related to his administrative remedies be denied as moot.

defendants also named in this case. (ECF No. 2-1 at 7, 9-10); *Mount v. Fikes*, No. 21-cv-1489 (NEB/ECW) (D. Minn.) (ECF No. 1).[3] Mr. Collins, Mr. Mount, and Mr. Sebert alleged defendants violated their First Amendment Rights by interfering with their access to various types of mail. (*See* ECF No. 2-1 at 10.) In November 2021, the *Mount* court found the complaint was frivolous as pleaded and ordered the plaintiffs to file an amended complaint ("November Order") (*id.* at 139-142). The November Order specifically directed the plaintiffs to: (1) file an entirely new pleading; (2) include a complete and coherent description of the historical facts on which the lawsuit was based; (3) clearly identify each named defendant and describe what he or she did or failed to do that was unlawful, and explain how his or her action or inaction violated the plaintiffs' rights or applicable law; and (4) clarify whether the plaintiffs sued each defendant in his or her individual or official capacity. (*Id.* at 141.)

Mr. Mount responded to the November Order by filing a self-styled "Memorandum," purportedly on behalf of himself, Mr. Collins and Mr. Sebert ("Mount Memorandum") (*id.* at 165-178). The *Mount* court accepted the Mount Memorandum as an appropriate amended complaint but noted that only Mr. Mount had signed it. (*Id.* at 281.) Mr. Collins later filed a copy of the Mount Memorandum with his own signature.[4] (*Id.* at 329-342.) The *Mount* court subsequently severed Mr. Collins's claims from Mr. Mount's and directed the Clerk of Court to establish a new docket number for the resulting case. (*Id.* at 368.) This action followed.

---

[3] The Clerk filed the contents of the *Mount* docket in this case. (*see* ECF No. 2-1.) That document contains the entire docket from the now-separate case file. For clarity, the Court cites filings in *Mount v. Fikes* by referencing the documents filed in this case file.

[4] Mr. Sebert also filed a copy of the document with his own signature, but the *Mount* court ultimately dismissed his claims as moot because he no longer resided at FCI-Sandstone. (ECF No. 2-1 at 363 n1, 365.)

2

The operative complaint in this matter is the Mount Memorandum, as signed by Mr. Collins (henceforth, "Complaint") (ECF No. 9). The Complaint alleges Defendants violated Mr. Mount's First Amendment Rights under 42 U.S.C. § 1983, and by extension, Mr. Collins's First Amendment Rights, by: (1) imposing a "[b]lanket ban" under which FCI-Sandstone prisoners cannot receive any mail sent with the use of mailing labels ("Claim I") (ECF No. 9 at 3); (2) impermissibly prohibiting prisoners from using Forever Stamps ("Claim II") (*id.* at 6); (3) improperly interfering with prisoner communications through their handling of "religious affiliation and legal mail" such as "[c]hurch news letters, news papers, subscriptions, religious mail, letters from book clubs, letters from advocacy groups, etc.," ("Claim III") (*id.* at 3-4, 8 (as written)); and (4) inappropriately barring prisoners from receiving "book-club books" based on a spurious objection concerning an alleged "unknown substance" ("Claim IV") (*id*. at 10).

The Court construes the Complaint liberally because Mr. Fikes is not represented. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (*pro se* pleadings must be liberally construed); *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (a court should construe a *pro se* pleading in a way that permits the layperson's allegations to be considered within the proper legal framework). But even construing the Complaint liberally, the Court finds the allegations in Claims II and IV relate only to Mr. Mount.[5] (*See* ECF No. 9 at 6-8, 10-14.) The Court recommends these claims be dismissed for this reason and includes only Claims I and III in its analysis.

---

[5] In a "History Section," the Complaint describes how mailroom staff rejected Mr. Mount's letters with Forever Stamps and rejected over thirteen of Mr. Mount's book club books. (ECF No. 9 at 2-3.) The Complaint then states:

Meanwhile, Mr. Collins and Mr. Sebert were also struggling to receive mail. Namely letters from religious institutes and also from family due to the facility blanket ban on "ALL mailing labels" that encompassed too broad a net over seemingly innocent mail, as mailing labels are a standard practice to be used this day and age. The FCI blanket ban had been overbroad and fail to consider the

The Complaint seeks injunctive relief, including requirements that relevant mailroom staff: (1) "re-evaluate [the] policy of rejecting all mail with mailing labels where 'alternatives' of simply copying the envelope and stapling it to the rest of the contents of the letter and giving that to the inmate" (*id.* at 6); (2) stop "rejecting … Forever Stamps for no logical [reason]" (*id.* at 8)[6]; and (3) "allow inmates to view book club books that are rejected for 'unknown substance' in order to perfect their appeals to any conduct in the mail room that would violate the inmates rights to receive book club books" (*id.* at 14).  Only the first request is relevant to Mr. Collins's claims.

The Complaint does not specify whether Mr. Collins sues Defendants in their official or personal capacities.  (*See generally* ECF No. 9.)  "In actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).  Prior to severing Mr. Collins's claims, the *Mount* court directed the plaintiffs to clearly identify what each defendant is alleged to have done or failed to do, and to clarify in any amended complaint whether they sued each defendant in his or her individual or official capacity.  (ECF No. 2-1 at 141.)  Despite these directives, the Complaint does not identify any defendant's actions with specificity or offer a clarification regarding the capacity in which each defendant is sued.  Because the Complaint does

---

windfall impact on prisoner's liberty, creating an "exaggerated response" to a prison concern with out providing a logical ".

(*Id.* at 3 (as written).)  The Court cannot identify any allegation in the Complaint's History Section, within the description of Claims II or IV, or anywhere else in the Complaint, to indicate that the alleged facts underlying Claims II or IV apply to Mr. Collins.

[6] The Complaint also includes a request for monetary relief related to Mr. Mount's rejected Forever Stamps.  (*See* ECF No. 9 at 8, stating that the Court should "award Mr. Mount in the requested amount for his loss of materials, costs, and fees for filing and pain and suffering he has endured for the unwarranted vexatious actions".)  This request for relief is unrelated to the two Claims that apply to Mr. Collins.

not provide notice that Defendants could be exposed to personal liability, the Court analyzes Mr. Collins's claims against Defendants in their official capacities only.

Defendants now move to dismiss Mr. Collins's claims under Fed. R. Civ. P. 12(b)(6) for failure to state facts that plausibly give rise to a claim for relief, or in the alternative, under Rule 56(a) for summary judgment. (ECF No. 25.) Defendants further contend Mr. Collins's claims fail because he did not exhaust his administrative remedies. (*Id.*)

## DISCUSSON

### I.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).   In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."[7]   *Twombly*, 550 U.S. at 556.   Although pro se complaints must be construed liberally, such complaints still must contain sufficient facts to state a claim as a matter of law.   *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II.   Mr. Collins's Section 1983 Claims

The Complaint cites 42 U.S.C. § 1983 as a basis for its Claims.   (ECF No. 9 at 1.)   Section 1983 is limited to claims against those who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."   42 U.S.C. § 1983.   Importantly, the statute does not authorize redress against the United States.   *Davis v. United States*, 439 F.2d 1118, 1119 (8th Cir. 1971) (per curiam) ("By its plain language [section 1983] does not authorize redress against the United States."); *see also Jones v. United States*, 16 F.3d 979, 981 (8th Cir. 1994) ("[T]he statute is inapplicable when a person acts under color of federal law.").)

Defendants argue Mr. Collins's section 1983 claims fail because the allegedly improper actions he challenges were taken by officials acting under federal law.   (ECF No.  26 at 6-7.)   The Court agrees.   Mr. Collin's Claims are limited to allegations concerning official conduct at FCI-Sandstone, a federal correctional institution.   Under federal law, a warden must "establish and exercise controls to protect individuals, and the security, discipline, and good order of the institution."   28 C.F.R. § 540.12(a).   The "blanket ban" Mr. Collins complains of, and that gives

---

[7]   The Court declines to convert this Motion into one for summary judgment.  *Skyberg v. United Food and Com. Workers Int'l Union, AFL—CIO,* 5 F.3d 297, 302 n. 2 (8th Cir.1993) (it is within the Court's discretion to convert a Rule 12(b)(6) motion into one for summary judgment). The Court therefore considers only materials appropriate under Rule 12(b)(6).  *Porous Media Corp.*, 186 F.3d at 1079.

rise to his Claims, is a policy issued pursuant to that law.[8]  (*See* ECF Nos. 27-1, 27-2 (mail management policy designed to curb the distribution of narcotics).)  The Complaint contains no allegations or even any inference that Defendants acted under color of any state statute, ordinance, regulation, custom, or usage.

When appropriate, a court may liberally construe a *pro se* prisoner's section 1983 against federal officials to assert claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  *See, e.g.*, *Schuett v. LaRiva*, Civ. No. 15-4207 (WMW/SER), 2016 WL 11198353, at *7 (D. Minn. Nov. 3, 2016), *R&R adopted as modified*, 2017 WL 123427 (Jan. 12, 2017), aff'd per curiam, 697 Fed. Appx. 475 (8th Cir. 2017) (mem.) (plaintiff sought monetary damages for pain and suffering); *Cooke v. Stanton*, Civ. No. 08-1175 (MJD/JJK), 2009 WL 424537, at *2 n.1 (D. Minn. Feb. 18, 2009) (same).  Mr. Collins's claims would not be cognizable as a *Bivens* action, however, because he seeks only injunctive relief against Defendants in their official capacities.  *See, e.g.*, *Bivens*, 403 U.S. at 397 (a plaintiff "is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment"); *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) ("[R]elief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action."); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."); *Mendez v. FMC Rochester*, Civ. No. 20-cv-1717 (KMM/JFD), 2022 WL 1110137, at *4 (D. Minn. Jan. 12, 2022), *R&R adopted*, 2022 WL 972402 (D. Minn.

---

[8]  The policy underlying Mr. Collins's allegations is clearly embraced by the Complaint and the Court thus considers it on Defendants' motion to dismiss.  *Porous Media Corp.*, 186 F.3d at 1079.

Mar. 31, 2022) (declining to construe a *pro se* section 1983 claim against federal officers as a *Bivens* action because plaintiff did allege individual capacity violations or seek monetary damages). The Court accordingly declines to construe Mr. Collins's Complaint as a *Bivens* action and finds that he fails to state a claim under section 1983.

## III.    Other Federal Claims

Defendants further argue that even if the Court were to liberally construe Mr. Collins's Claims under other potentially relevant federal laws, such as the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-1(a)–(c), or the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C §§ 2000cc-1, 2000cc-2, Mr. Collins's Claims would fail because they hinge on "naked assertions" that do not allow the Court to make a reasonable inference that Defendants are liable under any theory. (ECF No. 26 at 9-13.) The Court agrees.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" may "seek[] relief other than money damages" against an officer or agency of the United States. 5 U.S.C. § 702; *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988). Mr. Collins broadly alleges that employees at FCI-Sandstone interfered with his access to religious mail and mail from his family because of a blanket ban on mailing labels. (*See* ECF No. 9 at 3, 8.) But Mr. Collins does not clearly allege that Defendants caused him to suffer any actual legal wrong.

Inmates lose privileges and rights while incarcerated. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Am. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 426 (8th Cir. 2007); *see also Pell v. Procunier*, 417 U.S. 817, 822 (1974) (an incarcerated person enjoys only "those First Amendment rights that are not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the corrections system"). A prison policy that might restrict an otherwise recognized First Amendment right "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Courts consider four factors when applying the *Turner* test: (1) whether a rational connection exists between the prison policy and a legitimate governmental interest advanced as its justification; (2) whether inmates have another way to exercise the right; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison CASE resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Id.* at 89–91. A plaintiff bears the burden to prove that a restriction is not reasonably related to the legitimate interest it purports to further. *See Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (applying *Turner*).

Here, Mr. Collins fails to identify any specific item of rejected mail, does not state who sent it, by whom it was rejected, or how often it was rejected, and does not address the alternatives Mr. Collins has for communicating with others outside the prison or whether he has ready access to those alternatives. The policy Mr. Collins contests appears to restrict the influx of mass-mailings. (*See* ECF No. 9 at 4, discussing newsletters, newspapers, subscriptions and letters from advocacy groups affixed with mailing labels.[9]) He argues the prison has a less-restrictive alternative for delivering such mail in that it could photocopy the mailing labels. (*Id.* at 6.) But in the absence of any allegation that Mr. Collins was actually deprived of any specific item or items he sought to receive, it is not possible to evaluate "whether a rational connection exists"

---

[9] Mr. Collins also complains the prion's policy deprives him of mail from "family", (ECF No. 9 at 3), but does not explain why his family members must address mail to him with affixed labels.

between the policy and the reasons given for it,[10] or to assess the impact of Mr. Collins's proposed alternative on the prison's resources. The Court finds Mr. Collins's threadbare allegations do not contain sufficient facts to suggest that he is entitled to relief under the *Turner* test, or that any Defendant caused Mr. Collins to suffer an actual legal wrong beyond a speculative level. *See Daywitt v. Harpstead*, Civ. No. 21-1848 (WMW/DTS), 2022 WL 2374133, at *4–*6 (D. Minn. June 30, 2022) (dismissing prisoner's First Amendment claims for failing to state enough facts to overcome the *Turner* test); *Smith v. Roy*, Civ. No. 10-2193 (JRT/TNL), 2012 WL 1004985, at *12 (D. Minn. Jan. 25, 2012); *R&R adopted sub nom. Smith v. Fabian*, 2012 WL 1004982 (Mar. 26, 2012) (same). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Mr. Collins's Claims similarly fail under the RFRA and the RLUIPA. The RFRA and the RLUIPA each prohibit the government from substantially burdening prison inmates' exercise of their religion and authorizes prisoners to seek relief against the government for such substantial burdens. 42 U.S.C. §§ 2000bb-1(a)–(c), 2000cc-1, 2000cc-2. To state a claim under the RFRA or the RLUIPA, Mr. Collins must "show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004). A substantial burden is one that "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious beliefs." *Id.* (quoting *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997)). The burden "must meaningfully curtail

---

[10] The Complaint alludes to the policy's purpose, namely, to block the influx of contraband into the prison. (*See* ECF No. 9 at 5.) While Mr. Collins's proposed alternative would prevent prisoners from receiving the mailing labels it would not address potential concerns regarding the mailings themselves as a source of contraband.

a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." *Id.* (alterations in original). Moreover, the "RLUIPA does not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise or learning." *Van Whye v. Reisch*, 581 F.3d 639, 657 (8th Cir. 2009).

Mr. Collins alleges only that because of the "blanket ban," he is "struggling to receive … letters from religious institutes" such as "[c]hurch news letters …[and] religious mail …." (ECF No. 9 at 3-4 (as written)). Mr. Collins does not plead facts showing the quantity or quality of any allegedly religious mail that was rejected, or how the policy prohibiting mailing labels meaningfully curtails his ability to express his adherence to his faith. Absent any facts showing how any Defendant substantially burdened his religious practice, the Court finds Mr. Collins also fails to state a claim under the RFRA or the RLUIPA.

## CONCLUSION

For these reasons the Court concludes the Complaint fails to state a claim for relief under section 1983 or any other potentially applicable statute. The Court accordingly recommends Defendants' Motion be granted and the Complaint be dismissal under Rule 12(b) (6).[11]

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMEND THAT**:

1.    Defendants' Motion to Dismiss (ECF No. [25]) be **GRANTED**;

---

[11]    Defendants also argue Mr. Collins's Claims fail because he did not exhaust his administrative remedies. (ECF No. 26 at 14-16.) Mr. Collins responds to this argument by requesting that the Court either determine the administrative process is futile or stay this case to allow time for administrative exhaustion. (ECF No. 38.) The Court need not address this issue because it recommends Mr. Collins's claims be dismissed on the merits.

2.  The Complaint (ECF No. [9]) be **DISMISSED** with prejudice; and

3.  Plaintiff's self-styled Sur-Reply/Motion (ECF No. [38]) be **DENIED AS MOOT**.

Dated:  February 6, 2023

*s/ Dulce J. Foster*
DULCE J. FOSTER
U.S. Magistrate Judge

## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).